UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RALCO INDUSTRIES, INC. d/b/a THE PLASTICS GROUP OF AMERICA, </br></br>*Plaintiff* </br></br>v. </br></br>SULLIVAN INSURANCE GROUP, INC. </br></br>*Defendant* | Civil Action No: </br></br>**COMPLAINT AND DEMAND FOR TRIAL BY JURY** |

## COMPLAINT

This is a civil action in which the plaintiff, Ralco Industries, Inc. d/b/a The Plastics Group of America ("Ralco"), petitions this Court to award damages against its insurance broker, Sullivan Insurance Group, Inc. ("Sullivan"). Ralco contends that it suffered damages in excess of $1.3 Million as a result of Sullivan's failure to make Ralco aware of and to acquire for Ralco insurance coverage for expenses incurred as a result of a product recall. Sullivan failed to obtain or even discuss with Ralco the insurance coverage available for product recall expense despite its express recognition that product recall expense coverage was appropriate for Ralco's business needs.

## PARTIES

1. Ralco Industries, Inc. d/b/a The Plastics Group of America is a Rhode Island corporation with a principal place of business located at 1112 River Street, Woonsocket, Rhode Island.

2. Sullivan Insurance Group, Inc. is a Massachusetts corporation with offices located at 72 River Park, Needham Heights, Massachusetts and 1 Mercantile Street, Suite 710, Worcester, Massachusetts.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it concerns a controversy between citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS

### The Relationship Between Sullivan and Ralco

5. In 2009, Ralco entered into an agreement with Sullivan, in which Sullivan agreed to assess the risks of Ralco, to advise Ralco of the insurance available for these risks, and to recommend the most appropriate coverage and insurance policies for Ralco's business needs.

6. Sullivan informed Ralco that it possessed a particular expertise and skill in obtaining insurance policies tailored to meet its clients' business needs.

7. Sullivan held itself out to the public and expressly represented to Ralco that it was an expert, advisor, and specialist in obtaining insurance coverage for its clients.

8. Sullivan's website states the following:

At Sullivan Group, we believe it all comes down to **assurance**. **Having the right plan in place to protect yourself and your line of business**. **Carefully assessing your level of security and customizing a strategy that reflects both your needs and your values. That's where we come in.**

**Since 1957** Sullivan Group has provided insurance and risk management services for individuals and small to mid-sized businesses. Although we're proudly independent, we represent virtually all major insurance carriers to give you a host of coverage options. And **our team of seasoned experts** — including 18 principal/owners — **offer trusted counsel to tailor just the right plan to your**

2

**unique situation**. Sullivan Group is fiercely proud of our local roots and relationships in Worcester, MA, and is equally excited about our growing reach domestically and internationally.

http://www.sullivangroup.com (Emphasis added.)

9. Ralco relied on Sullivan's representation that it "had a team of seasoned experts" in the insurance brokerage industry and that it was able to obtain the appropriate insurance to meet Ralco's coverage needs and "protect [itself] and [its] line of business."

10. In Sullivan's 2009-2010 Renewal Questionnaire Worksheet dated September 1, 2009, Sullivan identified Ralco's uninsured exposure for liability for product recall expense.

11. In its 2009-2010 Renewal Questionnaire Worksheet, Sullivan included "Product Recall Expense" in its "Potential Uninsured Exposure Listing" that was "meant to be utilized as a brief management document to assist in identifying potential uninsured or underinsured exposures to financial loss."

12. Although Sullivan recognized Ralco's uninsured exposure for product recall expense, it never explained to or discussed with Ralco the product recall coverage that was available on the insurance market.

13. Sullivan failed to inform Ralco that product recall coverage was available on the market.

14. Sullivan failed to provide Ralco with sufficient information to make an informed decision as to whether to purchase product recall expense coverage.

15. If Sullivan had informed Ralco of the availability of product recall expense coverage, Ralco would have purchased that coverage.

16. In its 2011-2012 Renewal Questionnaire Worksheet dated August 2011, Sullivan again recognized Ralco's uninsured exposure for product recall expense.

17. In the 2011-2012 Renewal Questionnaire Worksheet, Sullivan included "Product Recall Expense" in its "Potential Uninsured Exposure Listing" that "is meant to be utilized as a brief management document to assist in identifying potential uninsured or underinsured exposures to financial loss."

18. Sullivan again failed to explain or discuss product recall expense coverage with Ralco.

19. From 2010 through 2015, Sullivan obtained liability insurance for Ralco from the Hanover Insurance Group and, according to the Hanover Insurance Group, the policies issued by Hanover do not include product recall expense coverage.

20. As a result of Sullivan's failure to make Ralco aware of the coverage available on the market and failure to obtain adequate product recall expense coverage, Ralco has suffered substantial damages based on the recall of a product that incorporated resin manufactured by Ralco.

**The Recall of Ralco's Product**

21. Ralco manufactured a resin called Polifil® GFRMPPCC-40 (the "Resin").

22. By agreement dated May 1, 2006, Ralco sold the Resin to PolyOne Corporation through its distributor PolyOne Distribution (collectively, "PolyOne").

23. PolyOne distributed the Resin to Bombardier Recreational Products ("BRP") pursuant to a Supply Agreement, bearing BRP contract number LT-6189-04 (the "Supply Agreement").

24. BRP manufactured jet skis and used the Resin in steering column of the jet skis.

25. BRP determined a number of quality issues with respect to the Resin sold to BRP between January 2014 and May 2014 that necessitated a recall of all the jet skis with steering columns that incorporated the Resin.

26. In a February 10, 2015 letter to PolyOne, BRP asserted that some lots, including Lot 19308 and Lot 19229, of the Resin that PolyOne sold to BRP between January 2014 and May 2014 were defective.

27. BRP's February 10, 2015 letter claims that "(1) the Tensile Strength Specification of 12 500 +/- 2000 was not met and (2) the Resin contains a too high content of Ethylene (and/or the use of a low quality Ethylene)."

28. The February 10, 2015 letter states that PolyOne provided a warranty to BRP for the parts and resin supplied under the Supply Agreement.

29. Section 8 of the Supply Agreement states as follows:

> 8.1 PolyOne warrants good title to the Resins, and will pass through to BRP warranties available from its Resin suppliers to the maximum extent permitted and warrants that each Resin delivered under this Contract shall conform to and meet the Specification at the time of shipment by PolyOne.
>
> 8.2 BRP hereby reserves its rights and recourses available under law for warranty claims and/or reparation in connection with Supplier's defaults of or non-compliance to the Warranty in this Article 8 ("Warranty").

30. BRP claims in its February 10, 2015 letter that the warranty breach caused the loss sustained by BRP.

31. BRP alleged direct costs of $1,494,203.00 incurred on a potential total amount of $1,840,320.00, which included costs for engineering and labor; vendor credit note; rejected material; steering replacement campaign; and DOE testing.

32. PolyOne sent Ralco a letter dated February 18, 2015 to "serve as notice of a claim for breach of contract and warranties" relating to the Resin sold to PolyOne, which PolyOne then distributed to BRP.

33. In the February 18, 2015 letter, PolyOne demanded Ralco respond to and protect PolyOne against the claim that BRP asserted against PolyOne.

34. PolyOne alleged that Ralco was in breach of the agreement dated May 1, 2006 between PolyOne and Ralco. PolyOne also asserted that Ralco was in breach of the express and implied warranties in the agreement and the Uniform Commercial Code, including the warranty of specification.

35. Ralco informed Sullivan of the claim by PolyOne and on February 23, 2015, Sullivan, on behalf of Ralco, provided notice of the claim to Ralco's general liability insurer, Hanover Insurance Group.

36. By letter dated March 17, 2015, Hanover denied coverage to Ralco under its Commercial Liability Policy and Commercial Umbrella Policy "for what is essentially a product recall claim being presented by BRP to PolyOne and then tendered to Ralco as a breach of contract/breach of warranty claim."

37. On May 20, 2015, Ralco responded to Hanover's denial of coverage and informed Hanover that because it denied coverage and refused to defend Ralco, Ralco was compelled to pursue a settlement with PolyOne and BRP.

38. On May 22, 2015, Hanover informed Ralco that it "stands by its denial of coverage."

39. Because Hanover denied coverage to Ralco, Ralco was compelled to pursue a settlement with PolyOne and BRP and ultimately reached an agreement that required Ralco to

pay BRP $1,300,000 and to give BRP a price reduction of $0.05/pound on all Resin sold to BRP through May 31, 2019.

## COUNT I

### (NEGLIGENCE)

40. Ralco incorporates by reference, as if fully set forth herein, the allegations of Paragraphs 1-39 above.

41. As Ralco's insurance broker, Sullivan had a duty to inform Ralco of the insurance products available to protect it against the risks arising out of its business as a product manufacturer and to provide advice and make recommendations to enable Ralco to purchase any and all coverage that it deemed appropriate.

42. Sullivan breached its duty to Ralco by its failure to exercise the degree of care and competence that would be exercised by a reasonable insurance broker in obtaining, and/or communicating to Ralco information regarding, product recall expense coverage.

43. As a result of Sullivan's failure to exercise the degree of care and competence that would be exercised by a reasonable insurance broker in obtaining, and/or communicating to Ralco information regarding, product recall expense coverage, Ralco did not have insurance coverage for the product recall expense liability alleged by PolyOne and BRP and sustained damages in excess of $1.3 Million.

44. By agreeing to a settlement with PolyOne and BRP, Ralco avoided damage beyond the product recall expense liability that would have included injury to its reputation and legal defense costs.

## COUNT II

## (BREACH OF CONTRACT)

45.     Ralco incorporates by reference, as if fully set forth herein, the allegations of Paragraphs 1-44 above.

46.     Sullivan agreed to recommend and obtain insurance coverage for Ralco that would provide coverage for all of Ralco's foreseeable liability risks.

47.     Sullivan breached its agreement with Ralco by failing to obtain for Ralco insurance coverage for all of Ralco's foreseeable liability risks.

48.     Sullivan's breach of its agreement to procure for Ralco insurance coverage that would protect Ralco against the foreseeable risk of liability for product recall expense caused damages to Ralco in excess of $1.3 Million.

49.     By agreeing to a settlement with PolyOne and BRP, Ralco avoided damage beyond the product recall expense liability that would have included injury to its reputation and legal defense costs.

## COUNT III

## (NEGLIGENT MISREPRESENTATION)

50.     Ralco incorporates by reference, as if fully set forth herein, the allegations of Paragraphs 1-49 above.

51.     Sullivan, by its omission and commission, misrepresented material facts to Ralco that deprived Ralco of the opportunity to purchase insurance that provided product recall expense coverage.

52. Sullivan, by its omission and commission, led Ralco to believe that the insurance coverage it purchased through Sullivan would provide adequate coverage for Ralco's business risks.

53. These representations were negligently made as Sullivan failed to exercise the degree of care and competence that would be exercised by a reasonable insurance broker in obtaining, and/or communicating to Ralco information regarding, product recall expense coverage.

54. Ralco reasonably relied to its detriment on Sullivan's misrepresentation that the insurance coverage it recommended and obtained for Ralco would provide coverage for all of Ralco's foreseeable liability risks.

55. Sullivan's misrepresentations and failure to procure for Ralco insurance coverage that would protect Ralco against the foreseeable risk of liability for product recall expense caused damages to Ralco in excess of $1.3 Million.

56. By agreeing to a settlement with PolyOne and BRP, Ralco avoided damage beyond the product recall expense liability that would have included injury to its reputation and legal defense costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Ralco respectfully requests that this Court award the following relief:

(1) An award of monetary damages sufficient to compensate Ralco for all losses suffered as a result of Sullivan's failure to procure for Ralco insurance coverage that would have protected Ralco against the foreseeable risk of liability for product recall expense;

(2) Costs, reasonable attorneys' fees, and interest; and

(3) Such other and further relief as the Court deems just and proper.

**RALCO HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

        Respectfully submitted,
        Plaintiff,
        RALCO INDUSTRIES, INC. d.b.a. THE
        PLASTICS GROUP OF AMERICA,

        By its attorneys,

        /s/ Christopher J. O'Connor
        Christopher J. O'Connor, Esq. (#5078)
        **POORE & ROSENBAUM LLP**
        Commerce Center
        30 Exchange Terrace
        Providence, RI  02903
        (401) 831-2600 - telephone
        (401) 831-2220 - facsimile
        cjoconnor@poorerosenbaum.com


        *Of Counsel:*

        Thomas W. Evans, Esq. (seeking *pro hac vice* admission)
        Anthony R. Zelle, Esq. (seeking *pro hac vice* admission)
        **ZELLE MCDONOUGH & COHEN LLP**
        101 Federal Street, 14th Floor
        Boston, MA 02114
        Tel:  (617) 742-6520
        Fax:  (617) 973-1562
        tevens@zelmcd.com
        tzelle@zelmcd.com

Dated:  October 2, 2015